[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 130.]

HILL ET AL., APPELLANTS, *v*. CITY OF URBANA, APPELLEE.

[Cite as *Hill v. Urbana*, 1997-Ohio-400.]

*Torts—Political subdivision liable in damages for injury, death, or loss to persons or property caused by an act of any of its employees in connection with the performance of a proprietary function—Establishment, maintenance, and operation of a municipal water supply system is a proprietary function— R.C. 2744.01(G)(2)(c), construed and applied.*

1.  Pursuant to R.C. 2744.02(B)(2), a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property caused by an act or omission of the political subdivision or any of its employees in connection with the performance of a proprietary function.

2.  The "establishment, maintenance, and operation" of a municipal corporation water supply system encompasses, but is not limited to, the installing of water lines, equipment, and other materials which are a necessary part of the system and such activity is a proprietary function of a political subdivision.  (R.C. 2744.01[G][2][c], construed and applied.)

(No. 95-1924—Submitted November 13, 1996 at the Urbana Session—Decided June 25, 1997.)

APPEAL from the Court of Appeals for Champaign County, No. 94-CA-22.

————————————

{¶ 1} Appellant, Herbert Hill, worked as a general laborer for R.E. Holland Excavating, Inc. ("Holland").  Holland was hired by appellee, the city of Urbana, to assist appellee in improving its water distribution system.  Part of the project required the attaching of a new fourteen-inch water line to an existing twenty-inch line.  To complete the attachment, it was necessary to install a valve.

**{¶ 2}** On August 10, 1987, a crew of Holland workers, including appellant, arrived at a designated job site to install the required valve. A hole was dug and appellant, along with a Holland supervisor, descended into the hole to install the valve. The project was under the supervision of Urbana's Water Department Supervisor, Manny Gonsalves.

**{¶ 3}** In order to facilitate completion of the valve installation, Gonsalves ordered that the water supply to the existing line be shut off. Because the existing line was a source of supply to the city's water tower, Gonsalves was anxious to have the job completed so that the water could be turned back on. As appellant was tightening bolts to connect the valve, he heard Gonsalves tell a city employee to "crack" the valve and "bleed" some water back into the pipe. Upon hearing that instruction, appellant hollered to Gonsalves not to turn on the water. Gonsalves nodded his head at appellant and told a city employee to wait. Appellant then continued to tighten the bolts. Within a few minutes, however, Gonsalves once again ordered a city employee "to crack the valve." Appellant then stood up in the pit where he was working, turned around to face Gonsalves, and, gesturing with his wrench, stated "don't turn the damn water on while I am down here at this dead end." Gonsalves again indicated to appellant that he (Gonsalves) would wait. Appellant then knelt back down into the pit to continue tightening the bolts. Apparently, the exchanges between appellant and Gonsalves concerning the admonition not to turn on the water took place on three separate occasions.

**{¶ 4}** Notwithstanding appellant's specific requests and instructions, the water was turned on prior to completion of the valve installation. As a result, the water pressure blew the valve off the pipe, striking appellant in the head and shoulders. The Holland supervisor, who was in the pit with appellant, saw appellant lying in a semi-conscious state face down on the bottom of the pit. The water temporarily rose to the level of the supervisor's shoulders. Appellant's supervisor rescued appellant by rolling him into a lift bucket. Appellant was then lifted out of

the hole and taken to a hospital. As a result of the accident, appellant suffered serious and permanent injuries.

{¶ 5} On May 10, 1989, appellant filed an action for negligence against Urbana. Additionally, appellant's wife, Carolyn, brought a claim for loss of consortium. On September 8, 1994, the trial court granted summary judgment in favor of Urbana. The trial court held that the "City of Urbana has statutory immunity as to the claims of the Hills [appellants] because of Chapter 2744 of the Ohio Revised Code. The Court finds that the City was engaged in a governmental function at the time of the circumstances of this case." On appeal, the court of appeals affirmed the judgment of the trial court, holding, among other things, that the trial court properly granted summary judgment in favor of Urbana.

{¶ 6} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Brannon & Deutsch* and *David M. Deutsch*, for appellants.

*Green & Green, Thomas M. Green* and *Jennifer L. Layton*, for appellee.

*Martin, Browne, Hull & Harper*, *Robin R. Freeman* and *Richard F. Heil, Jr.,* urging affirmance for *amicus curiae,* R.C. Holland Excavating, Inc.

_____

**DOUGLAS, J.**

{¶ 7} The question presented by this case is whether the Political Subdivision Tort Liability Act ("Act"), as codified in R.C. Chapter 2744, gives immunity to the city of Urbana, appellee, under the facts of this case. No more than just a reading of the statute is required to answer this question in the negative. Accordingly, we reverse the judgment of the court of appeals and remand to the trial court for further proceedings.

{¶ 8} The parties raise several issues for our possible consideration. Implicitly raised is the question of the constitutionality of the doctrine of sovereign

immunity as applied to political subdivisions of this state.[2] Explicitly raised are the questions of whether R.C. Chapter 2744 abrogates the common-law public-duty doctrine and the special-duty exception of governmental immunity. Since we find and hold that even under the statute, appellant Hill's claim is well taken, we need not discuss these implicit and explicit issues.

{¶ 9} R.C. 2744.02(A)(1) provides:

"For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶ 10} R.C. 2744.02(A)(1) is not absolute. By its own terms, R.C. 2744.02(A)(1) is subject to R.C. 2744.02(B), which provides:

"Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision *is liable* in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or any of its employees in *connection with a governmental or proprietary function*, as follows * * *." (Emphasis added.)

{¶ 11} R.C. 2744.02(B)(1) through (5) then list circumstances where a municipal corporation is responsible for torts committed by an employee of the subdivision. Specifically, R.C. 2744.02(B)(2) states that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the

---

1. The author of this opinion continues to adhere to his dissent in *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 323, 662 N.E.2d 287, 296, an opinion in which Justices Resnick and Pfeifer concurred.

     See, also, *Garrett v. Sandusky* (1994), 68 Ohio St.3d 139, 141, 624 N.E.2d 704, 706 (Pfeifer, J., concurring).

political subdivisions." A "proprietary" function includes "[t]he establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, *and a municipal corporation water supply system*[.]" (Emphasis added.) R.C. 2744.01(G)(2)(c).

{¶ 12} Clearly, Urbana was involved in a proprietary function at the time of the accident. See, also, *Ranells v. Cleveland* (1975), 41 Ohio St.2d 1, 4, 70 O.O.2d 1, 2, 321 N.E.2d 885, 887, fn. 1 (It is clear that a city in the operation of its water department acts in a proprietary capacity.). Further, it is equally apparent that Urbana's conduct in turning on the water was, at the very least, negligent. Appellant had instructed Gonsalves on three separate occasions *not* to turn on the water until the job was completed. However, the water was turned on prior to the completion of the installation of the valve and, as a result, appellant was seriously injured. Thus, pursuant to the statute, liability attaches to appellee.

{¶ 13} The issue has and will be raised that this court is precluded from considering whether Urbana was performing a proprietary function because that specific question was not raised by appellants in the court of appeals. We disagree.

{¶ 14} This court has held on numerous occasions that the waiver doctrine is discretionary. See, *e.g., In re M.D.* (1988), 38 Ohio St.3d 149, 527 N.E.2d 286, syllabus. In fact, we specifically held that "[e]ven where waiver is clear, this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or *where the rights and interests involved may warrant it*." (Emphasis added.) *Id*.

{¶ 15} This case concerns the rights and interests of a worker who has been injured by a negligent tortfeasor. Moreover, this case involves not only a particular worker, but it also ultimately concerns the rights and interests of any citizen of this state who may be injured by the negligence of an employee of a political

5

subdivision. Accordingly, we not only have the authority to consider this issue, but we believe we also have the duty to do so.

{¶ 16} Therefore, we hold that (1) pursuant to R.C. 2744.02(B)(2), a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property caused by an act or omission of the political subdivision or any of its employees in connection with the performance of a proprietary function, and (2) the "establishment, maintenance, and operation" of a municipal corporation water supply system encompasses, but is not limited to, the installing of water lines, equipment, and other materials which are a necessary part of the system and such activity is a proprietary function of a political subdivision.

{¶ 17} The judgment of the court of appeals is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

LUNDBERG STRATTON, J., concurs in part and dissents in part.

MOYER, C.J., and COOK, J., separately dissent.

————————————

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 18} I agree with the majority's interpretation of the R.C. 2744.02(B)(2) exception to political subdivision immunity as set out in the syllabus. A political subdivision clearly engages in a proprietary function in the establishment, maintenance, and operation of a municipal water supply system, and therefore can be liable for acts of negligence in the performance of its duties. However, because this issue was clearly not raised below and because this is a civil case where plain error does not apply, I reluctantly conclude that the plaintiff has waived this issue and therefore is precluded from recovery.

{¶ 19} In searching through the lower court records, I find that although he alleged negligence, the plaintiff in his complaint did not plead the statutory exception to immunity, R.C. 2744.02(B)(2). In a brief to the trial court on the issue of statutory immunity, plaintiff even *agreed* that Urbana was engaged in a *governmental* function, again with no mention of an exception to statutory immunity under R.C. 2744.02(B)(2). In fact, the plaintiff did not even oppose Urbana's motion for summary judgment.

{¶ 20} On appeal to the court of appeals, Hill argued that a "special-duty" exception to the public-duty doctrine precluded Urbana from asserting statutory immunity as a defense to liability. Hill claimed that the special-duty exception to the public-duty doctrine is a common-law theory independent of statutory immunity, which would allow Hill to recover against Urbana under negligence standards. Alternatively, Hill argued that, pursuant to R.C. 2744.03(A)(5),[3] Urbana was liable because its actions were willful and wanton. Again, Hill did not argue that Urbana was liable under one of the enumerated exceptions to statutory immunity set out in R.C. 2744.02(B).

{¶ 21} It was not until his appeal to this court that Hill raised the argument that Urbana was liable for his injuries pursuant to one of the exceptions to statutory immunity set out in R.C. 2744.02(B)(2). Despite the fact that the issue of the statutory exceptions to liability had been waived below, the majority uses that cause of action as the basis to reverse the judgment of the court of appeals. After careful research of the case law and further analysis of the case cited by the majority, I reluctantly conclude that the case cited, *In re M.D.* (1988), 38 Ohio St.3d 149, 527

2. R.C. 2744.03(A)(5) is not an exception to statutory immunity, but rather is a defense to liability for a political subdivision. Further, even if we accepted Hill's argument that R.C. 2744.03(A)(5) could be used as a sword, Hill did not raise the issue at the appellate level until he filed his reply brief. A reply brief may only be used to respond to the opposing party's arguments. App.R. 16(C). Therefore, a reply brief cannot be used to raise a new issue as Hill attempted to do in his appellate case.

N.E. 2d 286, applies only to waivers in criminal cases and has no application in civil cases. Neither does *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075, apply where the wrong cause of action is pled. Despite my great sympathy for the plaintiff in this case, I cannot find the waiver to be correctable without doing serious damage to the entire issue of civil waiver. As Chief Justice Moyer's dissent points out, in our adversary system, an innocent party should not bear the risk of the other's omission. When there is such error in a civil case, the plaintiff may seek redress against his own counsel.

{¶ 22} Therefore, I join in Chief Justice Moyer's dissent on the issue of waiver.

_____

**MOYER, C.J., dissenting.**

{¶ 23} I respectfully dissent.

{¶ 24} Today the majority casts away any notion of reasonable certainty that we will not use our considerable powers to pronounce on issues not raised by the parties in the trial courts. Clearly, the facts of this case illustrate the pitfalls of expanding the discretionary aspect of the waiver doctrine based only upon a standard of whether the "rights and interests involved warrant it."

{¶ 25} Subsequent to the incident that caused Hill's injury, as described in the majority opinion, Hill and his wife, Carolyn, filed an action for negligence and loss of consortium against Urbana in the Champaign County Court of Common Pleas. At trial, Hill asserted two arguments. He first claimed that Urbana was liable because the city assumed a special duty to act to insure his safety. In addition, Hill argued that Urbana was subject to suit because Gonsalves exercised his supervision over the project in a wanton and reckless manner, thereby leading to his injury. *At no time did Hill claim that Urbana was liable under **any** of the statutory exceptions to immunity outlined in R.C. 2744.02(B).* Hill did not even mention R.C. Chapter

2744 in substance, except to simply assert that Urbana was not immune under the statute. Hill also never asserted that Urbana's project was a proprietary function that would potentially subject it to liability under R.C. 2744.02 (B)(2). *In fact, plaintiff's counsel stated in his brief to the trial court that "Herbert Hill was involved in a **governmental** function.*" (Emphasis added.)

{¶ 26} The trial court accepted that view and granted summary judgment to Urbana, finding, *inter alia*, that the city was engaged in a governmental function at the time of the incident. Hill did not appeal that finding to the court of appeals. Rather, he posited the same two arguments to the appellate court that he had asserted in the trial court. It was not until he filed his reply brief that Hill raised the issue of Urbana's liability under R.C. 2744.02(B). The court of appeals affirmed.

{¶ 27} Hill then argued to this court that Urbana was subject to suit because the city's actions fell within at least one of the exceptions enumerated in R.C. 2744.02(B). As the majority rightfully notes, the thrust of Hill's claim is that Urbana's employee was negligent in turning on the water which led to his injury. Therefore, Hill asserts here that Urbana is liable under R.C. 2744.02(B)(2), which subjects political subdivisions to suit when a municipal employee acts negligently in the performance of a proprietary function. R.C. 2744.01(G)(2)(c) defines "proprietary function" as "[t]he establishment, maintenance, and operation of a utility, including, but not limited to * * * a municipal corporation water supply system," R.C. 2744.01(G)(2)(c), thereby, Hill contends, allowing him to assert a claim under R.C. 2744.02(B)(2).

I

{¶ 28} It is well settled that we will generally not consider issues in a civil action that are not presented for consideration to the trial court. *State ex rel. Zollner v. Indus. Comm.* (1993), 66 Ohio St.3d 276, 278, 611 N.E.2d 830, 832; *Miller v. Wikel Mfg. Co.* (1989), 46 Ohio St.3d 78, 78-79, 545 N.E.2d 76, 79; *Centennial*

*Ins. Co. v. Liberty Mut. Ins. Co*. (1980), 62 Ohio St.2d 221, 226, 16 O.O.3d 251, 254, 404 N.E.2d 759, 763, fn. 5; *State ex rel. Hamblin v. Brooklyn* (1993), 67 Ohio St.3d 152, 154, 616 N.E.2d 883, 885. Similarly, we will not consider a claimed error which was not raised and assigned as error in the appellate court. *Foran v. Fisher Foods, Inc.* (1985), 17 Ohio St.3d 193, 194, 17 OBR 430, 431, 478 N.E.2d 998, 999; *State v. Williams* (1977), 51 Ohio St.2d 112, 117, 5 O.O.3d 98, 101, 364 N.E.2d 1364, 1367, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156; *State ex rel. Babcock v. Perkins* (1956), 165 Ohio St. 185, 59 O.O. 258, 134 N.E.2d 839, paragraph three of the syllabus. Hill is therefore precluded from raising the applicability of the statutory exceptions to immunity to Urbana here, and is specifically estopped from raising the applicability of R.C. 2744.02(B)(2) because he did not assert it at trial and did not appeal the trial court's finding that Urbana was engaged in a governmental function at the time of the accident.

{¶ 29} By applying the standard enunciated in *In re M.D*. (1988), 38 Ohio St.3d 149, 527 N.E.2d 286, the majority claims the right to decide this case based on issues not presented to this court, on the grounds that the "rights and interests involved may warrant it." The majority therefore implicitly recognizes the myriad of omissions present in Hill's case, but does not apply the proper analysis in deciding whether Hill waived his newfound claims by failing to raise them in the trial and appellate courts. *In re M.D.* was a criminal case where the defendant-appellant raised the issue of constitutionality of a rape statute for the first time on appeal. *In re M.D.* at 150, 527 N.E.2d at 287. In analyzing the issue of waiver there, we exercised our discretion after reviewing the doctrine, *as it applies to criminal cases*. Given the critical distinctions between civil and criminal actions (among those being the penal nature of sanctions imposed on criminal defendants), this court has never applied the plain-error doctrine adopted for criminal appeals to appeals in civil actions. Applying the doctrine in criminal actions often raises

constitutional issues that simply do not exist in civil cases. Accordingly, the authority upon which the majority rests its decision has no application to this civil action.

{¶ 30} Even application of the majority's new standard cannot compel an outcome favorable to the plaintiff. The majority states that deviation from the waiver doctrine is warranted because this case "concerns the rights and interests of any citizen of this state who may be injured by the negligence of an employee of a political subdivision." Were we to apply the waiver doctrine here, we would no more restrict the ability of any person to recover under R.C. 2744.02(B)(2) than if the General Assembly were to eliminate that provision altogether. Applying the waiver doctrine here does not require any pronouncement as to the scope of recovery provided by R.C. 2744.02(B)(2). The next plaintiff certainly may plead, argue, and appeal the proprietary nature of a political subdivision's conduct. The importance of this case is simply that a plaintiff failed to assert a legal basis for his claims at trial and failed to assert error on appeal.

{¶ 31} While the majority is correct in stating that the waiver doctrine is not absolute, absent from the majority's analysis is any reference to case law analyzing the waiver doctrine as it applies to civil cases. There are two bases upon which we have applied the waiver doctrine in civil appeals. The first is enumerated in *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075. In *Belvedere*, we presented one analytical framework for deciding when we may consider legal issues not raised in the trial or appellate courts. We stated there that "[w]hen an issue of law that was not argued below is implicit in another issue that was argued and is presented by an appeal, we may consider and resolve that implicit issue. To put it another way, if we must resolve a legal issue that was not raised below in order to reach a legal issue that was raised, we will do so." *Id*. at 279, 617 N.E.2d at 1079. Pursuant to *Belvedere*, we would consider Hill's new claim that Urbana's acts at the time of the accident

fall within a statutory exception to immunity outlined in R.C. 2744.02(B) only if this court must decide that issue in order to reach an argument that Hill did raise below. Since this is the only issue of law put before us that the plaintiff failed to raise below, we may determine only whether this precise issue is implicit in other issues that were correctly raised.

{¶ 32} Hill asserts two propositions before this court that were properly argued in the court of appeals. He first argues that the public-duty doctrine applies to this case. Therefore, the issue that appellant failed to raise below (Urbana's liability under R.C. 2744.02[B][2] because it was engaged in a proprietary function) must be implicit within the issue of whether the common-law public-duty doctrine survived the enactment of statutory sovereign immunity if we are to properly consider that claim. Clearly, we are not compelled to resolve whether Urbana's actions fall within a statutory exception to immunity in order to decide whether R.C. Chapter 2744 abrogated the public-duty doctrine.

{¶ 33} Hill also contends that Urbana is liable under R.C. 2744.03(A)(5) because the city performed the acts that led to his injury with wantonness and recklessness.

{¶ 34} R.C. 2744.03(A)(5) provides:

"The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, *unless* the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." (Emphasis added.)

{¶ 35} Hill argues the applicability of R.C. 2744.03(A)(5) as if it were a provision allowing him to claim Urbana's liability under R.C. Chapter 2744. R.C. 2744.03(A)(5), however, is not an exception to immunity; it is a *defense* to liability. Only a municipality may assert the defenses and immunities provided in R.C.

2744.03, *in response to a claim of liability based on the statutory exceptions to immunity enumerated in R.C. 2744.02(B).*

{¶ 36} Therefore, Hill cannot establish Urbana's liability under R.C. 2744.03(A)(5). He may only argue that Urbana is not entitled to the defense of R.C. 2744.03(A(5) because the city acted with wantonness and recklessness, if he had first claimed Urbana's liability under R.C. 2744.02(B) and Urbana in turn had claimed R.C. 2744.03(A)(5) as a defense.

{¶ 37} Therefore, a claim that a subdivision is liable under R.C. 2744.02(B) is a necessary predicate to the assertion of a defense by a political subdivision under R.C. 2744.03. R.C. 2744.02(B) itself states that political subdivision liability under that section is "subject to" the defenses or immunities designated in R.C. 2744.03. Similarly, a municipality must assert R.C. 2744.03(A)(5) as a defense before the injured party may argue, under that section, that the defense is unavailable due to malicious purpose, bad faith, wantonness, or recklessness on the part of the municipality.

{¶ 38} Throughout this case, however, Urbana has never had the opportunity to assert R.C. 2744.03(A)(5) as a defense, or any of the other defenses outlined in R.C. 2744.03, because Hill at trial did not claim that the city was liable under R.C. 2744.02(B). Consequently, if we apply the plain words of the statute, Hill cannot claim that Urbana is liable under R.C. 2744.03(A)(5). Since appellant could not procedurally raise this issue, it is therefore unnecessary to decide whether Urbana's actions subject the city to suit under R.C. 2744.02(B). Thus, under *Belvedere* we may not consider Hill's R.C. 2744.02(B) claim.

II

{¶ 39} Analysis of waiver in *Belvedere* and the sister doctrine of plain error indicates that we may exercise discretion only within the narrowest of confines. While part of this court's role is to decide cases in a way that expresses the law in an orderly and predictable manner, *Belvedere*, 67 Ohio St.3d at 279, 617 N.E.2d at

1079-1080, that role is balanced with other interests of the judiciary and the legal system. Judges, attorneys, parties, and other citizens expect and deserve a system of appellate procedure that provides fairness, certainty, and finality. To that end, our law has, until today, reflected a long-standing doctrine that appellate courts will not consider issues not raised in the trial court or assigned as error. Exceptions to the waiver doctrine should be crafted with considerable caution in order to protect and maintain a credible appellate system. Courts have long required orderly procedure in the judicial system "to avoid unnecessary delay" and to prevent parties from taking advantage of favorable outcomes or eluding unfavorable ones. See *State v. Childs* (1968), 14 Ohio St.2d 56, 62, 43 O.O.2d 119, 123, 236 N.E.2d 545, 549, citing *Douglas v. Alabama* (1965), 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934.

{¶ 40} No standard, whether it is that articulated in *Belvedere* or that of the majority, should permit us to consider an argument not raised below which is appended to a different issue that the party was not procedurally able to raise. Such a result is illogical and illustrates the need for caution in emphasizing the discretionary nature of the waiver doctrine. *Belvedere* allows us to consider only whether precise issues of law, raised before this court but not raised below, are implicit within precise issues of law that were properly argued at all stages of the appellate process. It does not permit us to consider an issue not raised below simply because it may be implicit within a general issue that forms the context of the case. In addition, if we apply the majority's standard, what framework are we to use in deciding whether the "rights and interests involved" in a case warrant our exercise of discretion in applying the waiver doctrine? Without a standard analytical process that provides some basis for exercising or declining to exercise discretion, the scope of the waiver doctrine is left to anyone's best guess.

{¶ 41} Further, our result today, based upon a very broad standard, does not serve our stated role of deciding cases in a way that reflects orderly and predictable

14

application of the law. *Belvedere*, 67 Ohio St.3d at 279, 617 N.E.2d at 1079-1080. We have disfavored the sister doctrine of plain error where no objection was made to the error at trial, limiting it to extremely rare cases involving exceptional circumstances. *Goldfuss v. Davidson* (1997), 78 Ohio St.3d 116, 679 N.E.2d 1099, syllabus, decided today. A party waives an issue for the purposes of appeal by failing to timely advise a trial court of possible error. See *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 436-437, 659 N.E.2d 1232, 1240; *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 260, 271, 652 N.E.2d 952, 961.

{¶ 42} Having applied the waiver doctrine in two recent cases, how do we support consistency in our decisions when we do not apply the doctrine here and instead state another standard? Here, the attorney for Hill not only failed to object to the trial court's finding that Urbana was engaged in a governmental function at the time of the incident, thereby waiving the issue for appeal, but counsel actually expressed agreement with that position in Hill's brief to the trial court.

{¶ 43} This is not an extremely rare case with exceptional circumstances. The sole issue here is the plaintiff's participation in the "error" at the trial court and his failure to raise issues of possible error on appeal. By not claiming that Urbana was liable under one of the exceptions enumerated in R.C. 2744.02(B), Hill failed to respond to the city's defense of statutory immunity. "When the defendant interposes an avoidance or affirmative defense which appears to have merit, the defense frequently becomes an issue upon which the case may turn. *Generally, the plaintiff must vigorously oppose the defense at the earliest opportunity.*" (Emphasis added.) *Gallagher,* 74 Ohio St.3d at 436, 659 N.E.2d at 1240. Parties, through their counsel, are responsible for shaping the trial through the issues they select for resolution; a trial court cannot reasonably be expected to anticipate the existence of an argument that is not raised, *Gallagher* at 436, 659 N.E.2d at 1240, nor may we

allow an opposing party to bear the loss caused by poor litigation of the trial by counsel for the party responsible, *Goldfuss* at 122, 679 N.E.2d at 1104.

{¶ 44} The exercise of discretion in this case, however, implicitly relieves parties in civil litigation and their counsel of this responsibility. Among the errors Hill and his counsel seek to elude are the failure to argue (in the alternative) the existence of a proprietary function at trial, failure to object to the trial court's finding of a governmental function, failure to appeal the finding of a governmental function, and failure to assert a claim of statutory liability in the merit brief to the court of appeals. "Requiring a non-erring party to bear the burden of his opponent's errors may not be reasonable in many circumstances and in fact may [itself] constitute a miscarriage of justice." *Deppe v. Tripp* (C.A.7, 1988), 863 F.2d 1356, 1361. No court, particularly this court, should relieve parties of their responsibility to raise all possible claims at every stage in the appellate process, particularly where, as here, a party can easily claim liability of another party but simply fails to do so. The rights of opposing parties and the interests of preserving a reliable, credible, and effective appellate system require no less.

{¶ 45} For the foregoing reasons, I respectfully dissent.

———————————

**Cook, J., dissenting.**

**{¶ 46}** Although I agree with much of the dissenting opinion written by Chief Justice Moyer,[4] I adhere to my view that the plain error doctrine should be reserved for use in criminal cases and held wholly inapplicable to civil cases.

**{¶ 47}** The majority holds that the doctrine should be applied "where the rights and interests involved may warrant it." How, then, are we, as courts, to rank rights and interests? By discarding the criminal and constitutional dimensions that grounded the court's plain-error analysis in *In re M.D.* (1988), 38 Ohio St.3d 149, 527 N.E.2d 286,[5] the majority leaves judges with standardless discretion to weigh interests according to personal predilections. Such an illusory standard is damaging to the integrity of the judicial process.[6]

---

3. Particularly, I am in general accord with Chief Justice Moyer's conclusion that this case is inapposite to *Belvedere Condominium Unit Owner's Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075. I would additionally note, however, that the rule in *Belvedere* should not be read to provide discretion to a court to make an exception to the waiver doctrine. Instead, the *Belvedere* court recognized that a legal issue that is not specifically argued must nevertheless be analyzed when its resolution is *essential* to determining an issue that was argued. Accordingly, it is more appropriate to analyze the *Belvedere* rule as exemplifying circumstances where an issue is *not waived* rather than as an exception to the waiver doctrine.

4. The complete syllabus of *In re M.D.* (1988), 38 Ohio St.3d 149, 527 N.E.2d 286, reads:
    "The waiver doctrine in *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, is discretionary. Even where waiver is clear, this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it."
    *In re M.D.* involved only review of *constitutional* issues not raised to the trial court and argued on appeal in a *criminal* case. There is *no* suggestion that the holding in *In re M.D.* was meant to apply to civil cases or to issues of no constitutional moment. The majority's deletion from the *In re M.D.* syllabus of any reference to *State v. Awan, supra,* and its use of italics after the conjunction "or" to imply that waiver may be excepted "where the rights and interests involved may warrant it," irrespective of whether the challenge involves constitutional issues, are misleading.

5. Bright-line generalizations ought to be favored over discretion-conferring approaches such as balancing tests, or "totality of the circumstances" tests. The benefits from application of a clear, previously enunciated rule include (1) the appearance of equal treatment, (2) an ability to point to a rule in explanation of the decision, (3) uniformity in application, and (4) predictability. These legal values outweigh the occasional substantive distortion that may occur. Since our court reviews only a small percentage of the cases appealed, and our objective is a principled decision, "one that rests on reasons * * * that in their generality and their neutrality transcend any immediate result that is

**{¶ 48}** The standard announced in *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus, is, by its language, more cautious, but still provides no real boundaries for its application. The *Goldfuss* court held that plain error may be recognized in civil cases where the fairness, integrity, or public reputation of the judicial process necessitates its application. Neither *Goldfuss* nor the cases upon which it relies, however, found the plain-error doctrine applicable or provided a meaningful example of appropriate circumstances for its application. Instead, this court legitimizes plain error in civil cases—eschewing the uniformity, predictability and equal treatment of individuals that a complete ban would foster— based on the possibility that there is a scenario where its application would be judicious. As discussed in my concurring opinion in *Goldfuss* at 125, 679 N.E.2d at 1106, however, that scenario is more imaginary than real.

**{¶ 49}** Because this court has imported the doctrine of plain error into the civil arena despite its absence from our Civil Rules and fundamental inapplicability to the civil judicial process, and for the reasons cited in my concurrence in *Goldfuss,* I respectfully dissent.

————————————

involved," rules are better. Wechsler, Toward Neutral Principles of Constitutional Law (1959), 73 Harv.L.Rev. 1, 19.