OPINION
Plaintiffs, Harry C. Denune and Dixie Distributing Co., Inc. ("Dixie"), appeal from a summary judgment for Defendant, The City of Springfield, Ohio ("City"), on Plaintiffs' claims for injunctive relief, for a taking of property without just compensation, and for conversion, trespass, intentional interference with business relations, and negligence. Plaintiff Denune is owner of a multi-story structure located at 220 West High Street in Springfield and known as the Crowell-Collier Building. Dixie is a tenant of Denune, and it uses the building for storage of motorcycle parts that it sells to the public.
A fire occurred in the building on May 12, 1999. After the fire was extinguished, the City's fire marshall inspected the building and declared it unsafe. The marshall then padlocked the entrances to the building, denying Plaintiffs access to the contents inside.
Pursuant to City Ordinances, Plaintiffs had a right to appeal the fire marshall's orders to the Springfield Board of Building Appeals. Plaintiffs failed to file an appeal. Instead, they commenced the action underlying this appeal in the court of common pleas, seeking injunctive relief that would allow them to re-enter the building, as well as money damages.
On September 27, 1999, the common pleas court granted limited injunctive relief, permitting Plaintiffs to re-enter the building to make repairs necessary to bring it into compliance with the City's fire code and retrieve certain property. It appears that they did that, though they were required to pay for a "fire watch" while they were inside. It is unclear whether the required repairs were completed.
The City moved to remove the case to United States District Court on Plaintiffs' taking without just compensation claim. That court eventually remanded the case to the common pleas court because the federal claim was entertwined with state law claims that the common pleas court could better decide.
While the case was pending in federal court, the City filed an answer and counterclaim. Upon remand to the common pleas court, the Plaintiffs' filed an answer responsive to the City's counterclaim and an amended complaint. The City responded to the amended complaint.
When the initial pleadings were settled, the City filed a motion for summary judgment. Attached to the motion was an affidavit of J. Michael Beers, Fire Chief for the City of Springfield, stating facts concerning the fire and subsequent related events. Essentially, Chief Beers explained the basis for the fire marshall's order closing the building, that plaintiffs failed to take an administrative appeal from that order, and his opinion that the fire was rendered more difficult to suppress because "there was no operating fire sprinkler system in the building" because the system which was there was in need of repair. (Paragraph 16).
Plaintiffs filed a motion in opposition. They pointed to the allegation in paragraph 43 of their Amended Complaint, which states that "when the fire occurred . . . water was unavailable due to a city fire hydrant having been improperly, negligently, and/or intentionally sealed off." Their motion contra was support by an affidavit of their former attorney, who averred that documents attached to his affidavit demonstrate that the City's hydrant was shut off when the fire occurred. However, and perhaps inadvertently, no documents were attached to the affidavit.
The trial court granted the City's motion for summary judgment on November 15, 2001. It held that the Plaintiffs' claims arising from padlocking the building were barred by res judicata because Plaintiffs had failed to appeal to the Board of Building Appeals from the fire marshall's order. The court also held that their tort claims against the City are barred by the Political Subdivision Tort Liability Act, R.C Chapter 2744. Plaintiffs filed a timely notice of appeal. They present a single assignment of error, with an argument divided into several parts. They will be considered in an order designed to facilitate our analysis.
 ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
 Part 1 "RES JUDICATA DOES NOT ACT AS A BAR ON PLAINTIFFS' CLAIMS."
Civ.R. 56(B) provides that a defending party may move for summary judgment at any time on a claim asserted against the party in an action. Civ.R. 8(C) states that res judicata is an affirmative defense that must be pleaded. The City pleaded res judicata as an affirmative defense in its Amended Complaint. The trial court granted summary judgment on that defense.
Recently, in Lamar Outdoor Advertising v. City of Dayton Board ofZoning Appeals (June 21, 2002), Montgomery App. No. 18902, unreported, we explained the difference between res judicata and "failure to exhaust administrative remedies."
"Res judicata is a doctrine of judicial preclusion. It states that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. ParkmanTwp. (1995), 73 Ohio St.3d 379, paragraph one of the syllabus (emphasis added), 1995-Ohio-331. The prior judgment must be an order or decree entered on the merits by a court of competent jurisdiction. Norwood v.McDonald (1943), 142 Ohio St. 299. However, res judicata also "applies to administrative proceedings that are `of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding.'" Grava, supra, at 381, (quoting Set Products, Inc.v. Bainbridge Twp. Bd. of Zoning Appeals (1987), 31 Ohio St.3d 260, paragraph one of the syllabus).
"Exhaustion of administrative remedies," on the other hand, is a doctrine of judicial abstention. "Prior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal." Noernberg v. BrookPark (1980), 63 Ohio St.2d 26, 29. In Ohio, the doctrine is a court-made rule of judicial economy. Nemazee v. Mt. Sinai Medical Center (1990),56 Ohio St.3d 109, 111. "The purpose of the doctrine `* * * is to permit an administrative agency to apply its special expertise * * * in developing a factual record without premature judicial intervention.'"Id. (citing Southern Ohio Coal Co. v. Donovan (C.A. 6, 1985), 774 F.2d 693,702). Although the Noernberg decision deemed the failure to exhaust administrative remedies as a jurisdictional defect, the Supreme Court has more recently rejected that holding, and we have held likewise. Cooperv. Dayton (1997), 120 Ohio App.3d 34, 38 (citing Jones v. Chagrin Falls
(1997), 77 Ohio St.3d 456, 1997-Ohio-253)." Id., pp. 7-8.
In Lamar, supra, we held that a city zoning inspector's ex parte order created no preclusive bar under the doctrine of res judicata because it was not a judicial order rendered in a judicial proceeding. Likewise, the property owner's failure to take an available administrative appeal from the order created no preclusive bar because "a failure to obtain judicial relief that's available doesn't amount to judicial relief or operate as an order granting judicial relief, which res judicata
requires." Id., at p. 9.
Like the zoning inspector's order in Lamar, the fire marshall's order here was an ex parte administrative order. The proceeding in which it was issued was not one of a judicial nature where the parties had an ample opportunity to litigate the issues involved in the proceeding.Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 1995-Ohio-331. (Also see, Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals (1987),31 Ohio St.3d 260.) Therefore, Plaintiffs' failure to appeal the fire marshall's order to the Board of Building Appeals created no preclusion to a subsequent judicial review under the res judicata doctrine. To the extent that we have previously held to the contrary, those holding are overruled. See Platt v. City of Dayton (Dec. 5, 1998), Montgomery App. No. 10960, unreported; Annis v. City of Dayton (April 26, 1991), Montgomery App. No. 12047, unreported.
It is worth noting that in Annis, supra, we held that failure to exhaust administrative remedies created a res judicata bar. As explained above, the two principles are distinct, though both operate to make judicial review unavailable. In Lamar, supra, we went on to hold that, notwithstanding the inapplicability of res judicata, the property owner's failure to exhaust its administrative remedies justified an abstention by the court when judicial review was subsequently sought. The same applies here. Plaintiffs Denune and Dixie failed to file an appeal from the fire marshall's order closing the building with the Board of Building Appeals. That failure justifies an abstention by the court of common pleas from deciding any claims or granting any relief that the Board of Building Appeals might have granted. Therefore, in essence, the common pleas court was right when it declined to grant the injunctive relief that Plaintiffs requested, though for other reasons than the reason on which it relied.
An appellate court may decide an issue on grounds different from those determined by a trial court when the evidentiary basis on which the appellate court relies was fully adduced before the trial court. Statev. Peagler (1996), 76 Ohio St.3d 496, 1996-Ohio-73. We might do that here, except for the fact that the City pleaded only res judicata, not failure to exhaust administrative remedies in its Answer. Both are affirmative defenses, which are waived unless pleaded. See Civ.R. 8(C) and (D). For that reason, and because this is an appeal from a summary judgment on the defense which the City did plead, we are unable to affirm under the rule of Peagler, supra.
 Part 2 "THE TRIAL COURT ERRED IN RULING APPELLEE HAD POLITICAL SUBDIVISION IMMUNITY IN CONNECTION WITH ITS DECISION TO PAVE OVER THE WATER PATHWAY TO APPELLANTS' BUSINESS AND ITS REFUSAL TO ALLOW APPELLANTS TO RE-ENTER THE PREMISES AND RETRIEVE INVENTORY BEFORE IT WAS DAMAGED."
 A. "DEFENDANT IS NOT IMMUNE FROM SUIT FOR INJURIES ARISING FROM ITS DECISION TO TURN OFF AND SEAL OFF THE WATER SUPPLY TO DIXIE DISTRIBUTING, BECAUSE, SEALING OFF A WATER SUPPLY IS A PROPRIETARY FUNCTION OF APPELLEE."
 B. "THE CITY OF SPRINGFIELD IS NOT IMMUNE FROM SUIT OR INJURIES ARISING OUT OF ITS UNREASONABLE UNLAWFUL REFUSAL TO ALLOW APPELLANTS TO RE-ENTER THEIR BUSINESS PREMISES."
 C. "MATERIAL ISSUES OF FACT REMAIN TO BE LITIGATED ON ALL OF APPELLANTS' CLAIMS. ACCORDINGLY, THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT."
Our discussion in Part 1 addressed the trial court's order granting summary judgment for the City on Plaintiffs' claims for injunctive relief. This discussion will address their claims for money damages on allegations of conversion, trespass, wrongful interference with business relations, and negligence in cutting off the building's water supply. Those are tort claims. The Fifth Amendment "takings" claim will also be addressed.
The trial court granted summary judgment for the City on Plaintiffs' tort claims for relief, holding that the City is immune pursuant to the Political Subdivision Tort Liability Act, R.C. Chapter 2744.
The City is a political subdivision of the State of Ohio. Per R.C.2744.02, political subdivisions are not liable for damages allegedly caused by their acts or omissions in the performance of any "governmental function," except in the specific instances there provided. Those exceptions are not implicated here. Political subdivisions are, however, liable for damages allegedly caused by their acts or omissions in the performance of any "proprietary function," subject to the defenses for which R.C. 2744.03 provides.
R.C. 2744.01(C)(2)(a) defines governmental functions to include "[t]he provision or non-provision of police, fire, emergency medical, ambulance, and rescue services or protection." The trial court held that this section, coupled with the immunity afforded governmental functions by R.C. 2744.02, renders the City immune from liability on Plaintiffs' tort claims because the acts or omissions from which these claims arise involve the provision or non-provision of fire services or protection. Plaintiffs argue that the trial court misapplied R.C. 2744.01(C)(2)(a) to their tort claims. They argue that the City's alleged cut-off of the building's water supply involved a proprietary function, for which the City is not immune from liability. Plaintiffs point to the definitions of proprietary functions, which, per R.C. 2744.01(G)(1)(c), include "[t]he establishment, maintenance, and operation of a utility, including . . . a municipal corporation water supply system."
At some point, perhaps in the documents which Plaintiffs' former attorney failed to file with his affidavit, it was apparently suggested that the City had inadvertently cut-off the building's water supply in the course of paving an adjoining street. The City argues that this renders it immune because, per R.C. 2744.01(C)(2)(e), "the maintenance and repair of (,) roads, highways, streets, (and) avenues" is a governmental function.
We need not resolve whether the Plaintiffs' tort claims are governed by the road maintenance or the municipal water supply provisions of R.C.2744.01. Neither provision involves the acts or omissions which are alleged to constitute the City's conversion of Plaintiffs' property, or its trespass on Plaintiffs' property, or the City's wrongful interference with Plaintiffs' business relations. Those alleged torts each arise from the fire marshall's order padlocking the building, which was done in the course of providing fire services or protection. That is a governmental function. R.C. 2744.01(C)(2)(a). Therefore, per R.C. 2744.02(A) and (B), the City is immune from liability on those tort claims. Plaintiffs allege in their Sixth Claim For Relief that the building and its contents were damaged by the fire because the City had cut-off the supply of water to the building from the nearest hydrant. Plaintiffs' allege that the City's conduct in that regard was negligent or intentionally wrongful.
The record demonstrates that the building was equipped with its own fire sprinkler system, a system which the Plaintiffs, not the City, had installed. Therefore, R.C. 2744.01(C)(2)(a) has no application, the fire service or protection involved not having been provided by the City. Chief Beers' affidavit states that "there was no operating fire sprinkler system." He suggests that the system which was in place could be made operable through repairs. It is unclear whether some of those repairs might involve restoration of the water supply that the City had allegedly cut-off.
The City's acts or omissions in maintaining a municipal water supply system are proprietary, not governmental. R.C. 2744.01(G)(1)(c). The City remains liable for damages resulting from those acts or omissions when negligence or wrongful conduct are involved. See Hill v. City ofUrbana (1997), 79 Ohio St.3d 130, 1997-Ohio-400. Plaintiffs' Sixth Claim for Relief alleges acts or omissions of that kind, which are not wholly contradicted by the Beers' affidavit. The further suggestion that they involved road maintenance work, rendering them "governmental" acts per R.C. 2744.01(C)(2)(e), is on this record too speculative to credit under the standard that Civ.R. 56(C) imposes.
Finally, Plaintiffs alleged a taking of their property by the City without just compensation. While this was alleged to be "wrongful," in the sense of a tort, the claim invokes the protections of theFifth Amendment to the United States Constitution and Article I, Section 19, of the Ohio Constitution. The rights which those provisions confer are not subject to the limitations of the Political Subdivision Tort Liability Act. Plaintiffs' claim, in essence, creates an action for inverse condemnation, not one for money damages to which the Political Subdivision Tort Liability Act applies. Therefore, the trial court erred when it found the City immune on the claim involved. Having said that, however, we point out that a temporary regulatory deprivation ordinarily does not constitute a "taking" of property for Fifth Amendment purposes. See Tahoe-Sierra Preservation Council, Inc v. Tahoe Regional PlanningAgency (2002), ___ U.S. ___, 122 S.Ct. 1465, 152 L.Ed.2d 517.
 Conclusion
The trial court erred when it granted summary judgment for the City on Plaintiffs' request for injunctive relief on a finding that the claim is subject to the res judicata bar.
The trial court did not err when it granted summary judgment for the City on a finding that it is immune from liability on Plaintiffs' claims for conversion, trespass, and wrongful interference with business relations.
The trial court erred when it granted summary judgment for the City on a finding that is immune from Plaintiffs' claim for negligence alleging that the City had failed to provide an adequate water supply for their building's fire sprinkler system.
The trial court erred when it granted summary judgment for the City on Plaintiffs' claim that their property was taken for a public purpose without just compensation.
The assignment of error is sustained, in part, and overruled, in part. The case is remanded to the trial court for further proceedings consistent with this opinion.
BROGAN, J. and FAIN, J., concur.