OPINION
{¶ 1} Plaintiff-appellant, Winfield Construction, Inc., ("Winfield") appeals from the judgment of the Lake County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, City of Painesville ("Painesville"). We affirm the decision of the trial court.
 {¶ 2} In October 2000, Winfield and defendant, Oakton, Inc. entered into a purchase contract for the purchase of a triangular, 91,258 square-foot piece of property, located to the north of West Walnut Street and behind Marion Avenue. The contract of sale was contingent on the parties securing zoning approval from defendant-appellee, Painesville, to construct a minimum of 28 condominium units on the parcel.
 {¶ 3} On or about October 29, 2000, Winfield met with officials from Painesville, including Gary Payne ("Payne"), the city engineer, and Marilyn Robison ("Robison"), the former Painesville Community Development Director, to discuss details for the development of the condominium project, which was to be accessed by a private street. During his hearing with the Board of Zoning Appeals, Winfield admitted that this meeting was the only one he had with Painesville officials.
 {¶ 4} For planning purposes, parking for multi-family dwellings is considered an "accessory structure." Painesville Codified Ordinances 1131.05(e). Therefore, such parking is subject to the zoning requirement for multi-family dwellings that "[f]ront setbacks shall be measured from the edge of pavement or back of curb for private streets. A minimum 25 foot front setback shall apply." Painesville Codified Ordinances 1131.05(e)(4). In addition to the setback requirement, however, Section 1137.04(a) of the Painesville Codified Ordinances requires that each multi-family dwelling must be provided with two parking spaces per unit. See, Winfield v. Painesville, 11th Dist. No. 2003-L-117, 2004-Ohio-5626, at ¶¶ 9-10. At this initial meeting, the parties addressed the setback issue, and Payne and Robison recommended changes that would satisfy these zoning requirements. Winfield alleges that Painesville officials assured him that no variances would be required if he made the recommended changes to the development proposal.
 {¶ 5} Winfield's amended proposal addressed these requirements by having a single-car garage attached to each unit and by having the space located in front of the garage as the second parking space. Although the garages would sit twenty-five feet back from the private drive, the space in front of the garages would be less than twentyfive feet from the pavement of the drive. As the result of the changes, the proposed development now provided for 24 multi-family units, instead of 28 units, as originally planned.
 {¶ 6} Following this initial meeting with the engineer and development director, Winfield alleges that a series of phone calls with Painesville officials followed, in which minor changes to the plans were discussed, but claims that at no time did any city officials inform him that his proposal was in violation of Painesville zoning regulations. Believing that Painesville would approve his proposal as submitted, Winfield purchased the property in December 2000.
 {¶ 7} Thereafter, Winfield submitted the formal application for the proposed development to the city planning commission, which was responsible for final approval of development plans, pursuant to Painesville Codified Ordinance 1111.02. In July 2001, Winfield was informed for the first time that the proposed development did not comply with Painesville's planning and zoning ordinances because the second parking space did not also sit twenty-five feet back from the pavement of the private drive.
 {¶ 8} Winfield then sought two area variances for the proposed development. The first variance sought to reduce the twenty-five feet setback requirement for multifamily structures to five feet. The second variance sought to reduce the number of parking spaces required for multi-family dwellings from two spaces to one space. The Board of Zoning Appeals denied both requested variances.
 {¶ 9} On January 22, 2002, Winfield brought suit against Oakton, Inc., the seller of the property, Greenland Consulting, Inc., the engineering and consulting firm retained by Winfield to review Painesville's zoning ordinances, and Painesville. Winfield's complaint against Painesville, relevant to this appeal, alleged that he purchased the property in reasonable reliance on the representations of Painesville officials; that his proposal was in compliance with zoning regulations; and that, as a result of Painesville's denial of his variance requests, he could not profitably develop the property.
 {¶ 10} On November 25, 2002, Painesville filed a motion for summary judgment. Painesville's motion argued that, as a political subdivision under Ohio Revised Code, Chapter 2744, it is immune from suit stemming from the government functions it performs. Painesville further argued that Winfield's reliance on any alleged misrepresentation of any city official was unjustified, since under the law, Winfield is charged with knowledge of the proper process for procuring zoning approval. Winfield filed a brief in opposition to the motion on January 9, 2003, and a supplemental brief on January 14, 2003. Painesville then filed a reply brief on January 29, 2003. The trial court granted Painesville's summary judgment motion on February 29, 2003.
 {¶ 11} Winfield now appeals, asserting a single assignment of error:
 {¶ 12} "The trial court committed reversible error in granting summary judgment to the City of Painesville"
 {¶ 13} "Summary judgment is a procedural device to terminate litigation and to avoid formal trial when there is nothing to try. It must be awarded with caution * * *." Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359 (citation omitted). Summary judgment is proper when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. See, Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). In reviewing a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party. Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186. Moreover, an appellate court conducts a de novo review of the trial court's decision to grant summary judgment. Id.
 {¶ 14} Winfield argues that Painesville is liable for negligent misrepresentation, and, as a result is not immune from tort liability under R.C. 2744.02. We disagree.
 {¶ 15} The common-law concept of sovereign immunity has been largely codified in Ohio Revised Code Chapter 2744. See Wilson v. Stark Cty.Dept. of Human Servs. (1994), 70 Ohio St.3d 450, 453, 1994-Ohio-394. R.C. 2744.02(A) provides, in relevant part, that "the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
 {¶ 16} However the Supreme Court of Ohio has stated that "[t]he immunity afforded a political subdivision in R.C. 2744.02(A)(1) is not absolute, but is, by its express terms, subject to the * * * exceptions to immunity listed in * * * R.C. 2744.02(B)." Cater v. Cleveland,83 Ohio St.3d 24, 28, 1998-Ohio-491, citing Hill v. Urbana,79 Ohio St.3d 130, 1997-Ohio-400. The Court set forth a three-tiered analysis to determine whether a political subdivision is immune from tort liability: The first tier is to establish immunity under R.C.2744.02(A)(1); the second tier is to analyze whether any of the exceptions to immunity under R.C. 2744.02(B) apply; if so, then, under the third tier, the political subdivision has the burden of showing that one of the defenses of R.C. 2744.03 applies. If so, then immunity is reinstated. Cater, 83 Ohio St.3d at 28; Hubbard v. Canton Bd. ofEducation, 97 Ohio St.3d 451, 2002-Ohio-6718, at ¶ 10.
 {¶ 17} Winfield does not dispute that Painesville meets the first step and qualifies for general immunity under R.C. 2744.02(A). However, under R.C. 2744.02(B)(4), Winfield argues that since the alleged negligent misrepresentations occurred during a meeting held in a government building, Painesville should be relieved of immunity.
 {¶ 18} Since the events in question occurred in the year 2000, and the statute has been amended since then, we are obligated to review Winfield's assignment of error under the version of the statute that was in effect at the time. Hubbard, 2002-Ohio-6718, at ¶ 17 ("the General Assembly has attempted to change the language of R.C. 2744.02(B)(4). We are bound to apply the words of the law in effect at the time the alleged negligent acts occurred.")
 {¶ 19} The language of 2744.02(B)(4) in effect in 2000 states, in relevant part, "political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within * * * buildings that are used inconnection with the performance of a governmental function, including * ** office buildings * * *." (Emphasis added).
 {¶ 20} Winfield, relying on the Supreme Court's language in Hubbard,
which stated, "[t]he plain language of the subsection supports the conclusion that the General Assembly intended to permit political subdivisions to be sued in all cases where injury results from the negligence of their employees occurring within or on the grounds of any government building," 2002-Ohio-6718, at ¶ 13, argues that since the meetings in which the alleged negligent misrepresentations occurred in Painesville's offices, Painesville must be held liable for these misrepresentations, since Winfield reasonably relied on them to his detriment. This argument is, at best, disingenuous.
 {¶ 21} The facts involved in Hubbard are readily distinguishable from the case sub judice. Hubbard involved the alleged sexual assault of two girls, which took place at Hartford Middle School in Canton, Ohio. The parents of the two girls sued the school district for, inter alia, negligent retention/supervision of the teacher accused of the assault. Though the alleged tortious misconduct in the both cases did indeed occur in a government building, the injury in Hubbard, also occurred on in a government building. Winfield partially concedes this fact in his argument, when he states "[p]erhaps some of Appellant's damages flowing from the injury occurred outside the Painesville building, but the injury itself, the reliance on the misrepresentation made to Appellants by Painesville, occurred in the city owned buildings."
 {¶ 22} Winfield also cites to the Seventh District case, Barr v.Freed (1997), 117 Ohio App.3d 228. In Barr, the appellate court overturned the trial court's grant of summary judgment, finding there was a genuine issue of material fact precluding the dismissal of a negligence claim against the Columbiana County Department of Human Services ("CCDHS"). The social worker assigned to the case, along with her supervisor, removed the youth from a foster home after his foster parents accused him of sexually assaulting another child in the home. The youth subsequently committed suicide while in the care and custody of a private group home, after the caseworker dropped him off there without first ordering a suicide assessment on the youth, even though she had knowledge that he had recently made a prior suicide attempt. Although it would seem on the surface that the injury did not occur in a government building, the court found that, due to a formal placement agreement between the CCDHS and the group home, and because CCDHS kept a written information file on the facility, there was a genuine issue of material fact as to whether the group home was a "building used in connection with the performance" of a governmental function. 117 Ohio App.3d at 234. Unlike the instant case, the negligent act and the injury both occurred in a building which was arguably used in the performance of a government function.
 {¶ 23} Moreover, an injury cannot occur on reliance alone. One mustact on the reliance to his detriment in order to incur an injury. If we were to accept Winfield's reading of the statute, then Painesville would, without question, be immune from liability if the same alleged acts or omissions had been made by city officials in a setting other than a government building, even though he did not act upon the alleged misrepresentations until a later time. Surely the General Assembly did not intend such a patently absurd result. Courts have a duty to "follow the well established dictate that `statutes be construed to avoid unreasonable or absurd consequences,'" Stout v. Bd. of Trustees ofLiverpool Twp. (Mar. 22, 2000), 9th Dist. No. 2907-M, 2000 Ohio App. LEXIS 1122, at *5 (citations omitted).
 {¶ 24} Most importantly, even if Winfield could prove the injury based on his reliance on the representations of the city engineer, or other city officials occurred on in a government facility, he failed to prove that his reliance was reasonable. "It has long been the law of Ohio that persons dealing with municipal corporations are charged with notice of all statutory limitations on the power of such corporations and their agents, and must, at their peril, ascertain whether all necessary statutory formalities have been met. Kimbrell v. Seven Mile (1984),13 Ohio App.3d 443, 445 (citations omitted). "Such persons are not entitled to rely on actions of municipal corporations or their agentswhen pertinent statutory requirements are not met. Williamsburg v.Milton (1993), 85 Ohio App.3d 215, 219 (citation omitted). In the instant case, Painesville Municipal Ordinance 1111.02 provides that "[a]n application for approval for the final plat shall be submitted * * * to the Planning Commission." Thus, Winfield is charged with notice that neither the city engineer nor the planning director has ultimate authority to determine whether development plans meet local zoning requirements.
 {¶ 25} Construing the evidence in the light most favorable to Winfield, we find that under the facts of the instant case, 2744.02(B)(4) does not apply and Painesville is entitled to summary judgment as a matter of law. Winfield's assignment of error is without merit.
 {¶ 26} We affirm the judgment of the Lake County Court of Common Pleas.
Ford, P.J., Rice, J., concur.