[Cite as *State v. Young*, 2020-Ohio-4135.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellant,          :

    v.                                   :          No. 108868

WANDA YOUNG,                        :

    Defendant-Appellee.          :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** August 20, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-639007-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Callista Plemel, Assistant Prosecuting Attorney, *for appellant.*

Mark A. Stanton, Cuyahoga County Public Defender, and Paul A. Kuzmins, Assistant Public Defender, *for appellee.*

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Plaintiff-appellant, state of Ohio, with leave of court, appeals a judgment calculating the maximum term of supervision for defendant-appellee,

Wanda Young, who was found not guilty by reason of insanity. The state claims the following error:

> The trial court erred in determining the court's jurisdiction over defendant-appellee terminated after 11 years because R.C. 2945.401(J) requires the trial court to find defendant-appellee's maximum term of imprisonment would have been 11 to 16.5 years if convicted of aggravated burglary.

{¶ 2} We find merit to the appeal, reverse the trial court's judgment, and remand the case to the trial court to enter judgment committing Young to a mental hospital for treatment until either she is no longer mentally ill and requiring hospitalization or upon the expiration of the maximum term of supervision she could have received for conviction of a first-degree felony, i.e., 16 and one-half years, whichever occurs first.

## I. Facts and Procedural History

{¶ 3} On April 1, 2019, Cleveland police responded to a call about a break-in at a home on Delrey Avenue. Police observed a smashed window with large amounts of blood on the glass. Upon entering the home, the police followed the sound of noises coming from an upstairs bedroom where they found Young screaming at a 90-year old woman and her adult son. Young was bleeding profusely and the police observed blood all over the house. The police recognized that Young "was clearly in a crisis situation" and secured her. (Tr. 10.)

{¶ 4} Young was subsequently charged with two counts of aggravated burglary in violation of R.C. 2911.11(A)(1), two counts of assault in violation of R.C. 2903.13(A), two counts of abduction in violation of R.C. 2905.02(A)(2), one count

of disrupting public services in violation of R.C. 2909.04(A)(3), and one count of burglary in violation of R.C. 2911.12(A)(2). Young pleaded not guilty by reason of insanity.

**{¶ 5}** Following her arrest, Young was evaluated by Dr. Cathleen Cerny-Suelzer, a psychiatrist in the court psychiatric clinic. Dr. Cerny-Suelzer determined that Young was suffering from bipolar I disorder with psychotic features and that she recently experienced a manic episode with mixed features. Dr. Cerny-Suelzer opined that, as a result of Young's serious mental illness, she did not "know the wrongfulness of her actions" when she committed the acts giving rise to this case.

**{¶ 6}** Based on Dr. Cerny-Suelzer's expert opinions, the court found that Young proved, by preponderance of the evidence, that she suffered from a severe mental disease that so impaired her reason that she was unable to know the wrongfulness of her actions at the time she committed the acts charged in the indictment. Therefore, the court found Young not guilty by reason of insanity and ordered Young to be evaluated to determine whether Young should be subject to hospitalization pursuant to R.C. 2945.40.

**{¶ 7}** Dr. Cerny-Suelzer reevaluated Young pursuant to the court's order. At a subsequent hearing, the state and defense counsel stipulated to Dr. Cerny-Suelzer's finding that Young suffered from "a substantial disorder of thought, mood, and perception" that required hospitalization. (Tr. 16.) Based on Dr. Cerny-Suelzer's report and the stipulations of counsel, the court found that Young had a mental disorder requiring hospitalization, with the goal of conditional release back

into the community.  At the civil commitment hearing, Young explained that she had been off her medications for ten months.  She believed that she and her children were the victims of criminal activity and that she went to a neighbor's house to call for help "but somewhere along the way [her] synapses got crossed, or [she] snapped or something * * *" and she was "not sure how [she] went from wanting to call for help to breaking into [the victim's] home looking for [her] kids."  (Tr. 20-21.)  Young also stated that since being back on her medications, she was "feeling a lot better." (Tr. 8.)

{¶ 8}  With respect to hospitalization, the court stated, in relevant part:

In Ms. Young's case, Count 1 is an aggravated burglary, a felony of the first degree.  The possible prison term for that sentence -- sorry, for that crime is 3 to 11 years, which makes the maximum amount of time she would be subject to the court's jurisdiction 11 years.  It is this Court's interpretation that the tail or indefinite term that comes into play under Reagan Tokes Law would not apply to cases of not guilty by reason of insanity as the Department of Rehabilitation and Correction would be the entity that would keep Ms. Young incarcerated if she were in fact in prison.  Ms. Young's case does not implicate the Department of Rehabilitation and Corrections [sic].  So it is this Court's interpretation after research that the maximum amount of time Ms. Young can be placed under the Court's jurisdiction is 11 years.

(Tr. 22.)  The state did not object to the court's calculation of its maximum term of supervision of Young under the Reagan Tokes Law.  Nevertheless, the state now challenges the court's final calculation of its term of supervision in its sole assignment of error.

## II. Law and Analysis

{¶ 9} In the sole assignment of error, the state argues the trial court erred in determining the court's jurisdiction to supervise Young terminated after 11 years. The state contends that under R.C. 2945.401(J), as amended by the Reagan Tokes Act, Am.Sub.S.B. No. 201, 2018 Ohio Laws 157, the trial court should have found it had jurisdiction to supervise Young for an indefinite period of between 11 and 16 and one-half years, as a result of Young's not guilty by reason of insanity plea to two charges of aggravated burglary.

{¶ 10} Before discussing the state's sole assignment of error, we must first consider the effect of the state's failure to object to the trial court's final calculation of its term of supervision in the trial court. In general, the failure to raise an issue in the trial court, forfeits the issue on appeal. *Broadview Hts. v. Misencik*, 8th Dist. Cuyahoga No. 100196, 2014-Ohio-1518, ¶ 19.

{¶ 11} Young argues the issue is simply forfeited, and the trial court's judgment should be affirmed. The state, on the other hand, argues that Young's commitment to the hospital involves a criminal sentence that is contrary to law and is, therefore, reviewable as a void sentence. Indeed, void sentences are always reviewable. *State v. Harper*, Slip Opinion No. 2020-Ohio-2913, ¶ 18. Alternatively, the state argues we can review the trial court's judgment for plain error since it is within the appellate court's discretion to consider forfeited issues for plain error. *Hill v. Urbana*, 79 Ohio St.3d 130, 133-134, 679 N.E.2d 1109 (1997), citing *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus.

{¶ 12} Plain error in civil cases is limited to those "extremely rare cases" in which "exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a materially adverse effect on the character of, and public confidence in, judicial proceedings." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). Thus, to reverse on plain error, the error must be both apparent on the face of the record and prejudicial to the appellant. *Wells Fargo Bank, N.A. v. Lundeen*, 8th Dist. Cuyahoga No. 107184, 2020-Ohio-28, ¶ 12.

{¶ 13} As previously mentioned, the state argues that Young's sentence is void because it is contrary to law. However, the trial court's jurisdiction to supervise the rehabilitation of a person acquitted of a crime by reason of insanity is civil in nature, not criminal. *State v. Z.J.*, 8th Dist. Cuyahoga No. 87912, 2007-Ohio-552, ¶ 18. "A finding of not guilty by reason of insanity is not a criminal conviction." *Id.*, citing *State v. Tuomala*, 104 Ohio St.3d 93, 2004-Ohio-6239, 18 N.E.2d 272. Therefore, civil commitments due to not guilty by reason of insanity verdicts are not the same as criminal sentences. We must, therefore, consider whether the trial court's determination that its jurisdiction to supervise Young's civil commitment terminated after 11 years constituted plain error.

{¶ 14} R.C. 2945.401 governs the trial court's jurisdiction to supervise the rehabilitation of individuals found not guilty by reason of insanity. As relevant here, R.C. 2945.401(A) provides, in relevant part:

[A] person found not guilty by reason of insanity and committed pursuant to section 2945.40 of the Revised Code shall remain subject to the jurisdiction of the trial court pursuant to that commitment, and to the provisions of this section, until the final termination of the commitment as described in division (J)(1) of this section. * * *

R.C. 2945.401(J)(1) provides that a person found guilty by reason of insanity "continues to be under the jurisdiction of the trial court until the final termination of the commitment." Pursuant to R.C. 2945.401(J)(1), the commitment of a person found not guilty by reason of insanity terminates upon the earlier of one of the following:

(a) The defendant or person no longer is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order, as determined by the trial court;

(b) The expiration of the maximum prison term or term of imprisonment that the defendant or person could have received if the defendant or person had been convicted of the most serious offense with which the defendant or person is charged or in relation to which the defendant or person was found not guilty by reason of insanity;

(c) The trial court enters an order terminating the commitment under the circumstances described in division (J)(2)(a)(ii) of this section. [Governing competency to stand trial].

{¶ 15} The issue in this case concerns subjection (b),[1] which provides that the trial court's continuing jurisdiction to supervise an individual, found not guilty by reason of insanity, extends through the maximum prison term the individual could have received if he or she had been found guilty of the most serious offense

---

[1] Subsection (c) applies to issues related competency to stand trial and is, therefore, inapplicable here. Subsection (a) provides that the court's jurisdiction is terminated as soon as the individual no longer requires hospitalization. If hospitalization were no longer necessary and Young were released from the hospital, this appeal would be moot.

with which the individual was charged. In Young's case, the most serious offense charged was aggravated burglary, in violation of R.C. 2911.11(B), which is a first-degree felony.

{¶ 16} Prior to March 22, 2019, first-degree felonies were punishable by a definite prison term of 3 to 11 years, in one-year increments. R.C. 2929.14(A)(1)(b). However, on March 22, 2019, the Ohio legislature enacted the Reagan Tokes Act, which changed the terms of felony sentencing for qualifying felonies of the first or second degree. *See* R.C. 2929.14. A "'qualifying felony of the first or second degree'" is "a felony of the first or second degree committed on or after March 22, 2019." R.C. 2929.144.

{¶ 17} Young committed the acts giving rise to this case on April 1, 2019, and she was charged with two counts of aggravated burglary, both qualifying felonies of the first degree. R.C. 2929.144 governs maximum prison terms on qualifying felonies committed on or after March 22, 2019, and states, in relevant part:

> The court imposing a prison term on an offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree shall determine the maximum prison term that is part of the sentence in accordance with the following:
>
> (1) If the offender is being sentenced for one felony and the felony is a qualifying felony of the first or second degree, the maximum prison term shall be equal to the minimum term imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code plus fifty per cent of that term.
>
> * * *

{¶ 18} R.C. 2929.14, which governs basic prison terms for first-degree felonies and states, in relevant part:

> For a felony of the first degree committed on or after the effective date of this amendment, the prison term shall be an indefinite prison term with a stated minimum term selected by the court of three, four, five, six, seven, eight, nine, ten, or eleven years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code[.]

R.C. 2929.14(A). Thus, under the Reagan Tokes Act, the maximum prison term Young could have received for her most serious offense was 11 years plus fifty percent of the term, i.e., an additional five and one-half years, for a maximum indefinite prison term of 16 and one-half years, had she been convicted of the most serious offense for which she was charged.

{¶ 19} The trial court erred in concluding that it had jurisdiction to supervise Young's civil commitment for a maximum term of 11 years for first-degree felonies when the language of R.C. 2929.14(A) and 2929.144 clearly and unambiguously provides an indefinite term of 11 to 16 and one-half years. It is irrelevant that the Ohio Department of Rehabilitation and Correction determines when a criminal defendant may be released from prison; the trial court supervises the rehabilitation and possible release of individuals hospitalized due to insanity verdicts according to the time periods set forth in the statute. We, therefore, find that the trial court committed plain error by reducing the maximum term of Young's civil commitment from 16 and one-half years to 11 years in violation of the plain statutory language.

{¶ 20} Young argues that if we, in our discretion, consider the state's argument for plain error, we should find that the indefinite sentencing provisions of

the Regan Tokes Act are unconstitutional because they violate the separation of powers doctrine.  However, Young failed to raise this constitutional issue in the trial court. The "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan*,  22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus.  *See also State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15 (courts have discretion to decline consideration of forfeited constitutional challenges raised for the first time on appeal).

{¶ 21} Young failed to raise a constitutional challenge to the Reagan Tokes Act in the trial court, and we decline to address the issue for the first time on appeal.

{¶ 22} The sole assignment of error is sustained.

{¶ 23} Judgment reversed.  We remand the case to the trial court to enter judgment committing Young to a mental hospital providing the least restrictive commitment until either she is no longer mentally ill and requiring hospitalization or upon the expiration of the maximum term of supervision she could have received, i.e., 16 and one-half years, whichever occurs first.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the

trial court to enter judgment committing the defendant to the court's jurisdiction for up to 16 and one-half years in accordance with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS IN JUDGMENT ONLY;
PATRICIA ANN BLACKMON, J., DISSENTS WITH SEPARATE OPINION

PATRICIA ANN BLACKMON, J., DISSENTING:

**{¶ 24}** I respectfully dissent from that portion of the majority regarding the application of the Reagan Tokes Act to this matter. At first blush, this case presents the straightforward question of whether the Reagan Tokes Act, Senate Bill 201, applies to determine the terms of individuals who are hospitalized following not guilty by reason of insanity acquittals. In resolving this question, other threshold questions regarding the constitutionality of the Reagan Tokes Act itself readily comes to the fore. Yet given the posture of this case, those questions have not been adequately raised, heard in the trial court, or argued below. Therefore, we are faced with a conundrum: if we decide the issue as presented, we begin issuing caselaw that may serve as a sub silentio and premature comment on the constitutionality of the act. In the past, this court has endeavored to thoroughly address the constitutional issues surrounding an act before proceeding to the application of that act. *See State v. Lett*, 161 Ohio App.3d 274, 2005-Ohio-2665, 829 N.E.2d 1281 (8th Dist.) (en banc

consideration of Senate Bill 2 ).  Here, that option is not presented.  My fear is that in endeavoring to resolve the seemingly straightforward issue presented, we may say more than we intend.