[Cite as *State v. Singh*, 2021-Ohio-2158.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-09-056 |
| | : | O P I N I O N |
| - vs - | | 6/28/2021 |
| | : | |
| DALVIR SINGH, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CR35493

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Anzelmo Law, James A. Anzelmo, 446 Howland Drive, Gahanna, Ohio 43230, for appellant

**PIPER, P.J.**

{¶1} Appellant, Dalvir Singh, appeals his convictions in the Warren County Court of Common Pleas for robbery and kidnapping.

{¶2} In April 2019, a 70-year-old-woman ("Grandmother") drove her adult daughter and two minor great grandchildren to the emergency room so that the adult daughter could

receive medical attention for an illness.[1]  Grandmother drove her car to the front of the emergency room entrance and left it running with the two children inside while she took her daughter inside the emergency room.

{¶3}  The children, a ten-year-old girl and an eight-year-old boy, noticed a man sitting near the entrance of the emergency room, later identified as Singh.  Singh walked over to the running car, opened the driver's side door, tossed his bag inside the car, and entered the car.  He looked at the children in the backseat and spoke to them in a language that they did not understand.

{¶4}  The boy removed his seatbelt and moved closer to his sister, and Singh instructed the children to exit the vehicle.  However, the girl was unable to unbuckle her seatbelt.  The boy helped his sister remove her seatbelt and climbed over her lap to open the door nearest her.  As the boy tried to help his sister out of the car, Singh grabbed ahold of the girl's clothing by the hood in an attempt to keep her in the car while he drove away.  After a struggle, the boy was able to pull his sister from the moving car.  Both children fell out of the car onto the pavement.

{¶5}  During this time, Grandmother observed Singh driving away in her car and could hear the children screaming for help.  She ran after the car and grabbed onto the driver's side door, shouting and banging on the window.  Though she was able to open the door somewhat, Singh pulled it shut and continued to flee.  Not able to keep up with the fleeing car, Grandmother was forced to let go; falling to the ground and incurring injuries.

{¶6}  Singh was apprehended and questioned by a police officer after that officer gave Singh his *Miranda* rights.  Singh pled not guilty and filed a motion to suppress, which

---

1. The familial relationship between the parties is somewhat complicated, but has no legal impact on the appeal.  Thus, for ease of discussion, we will refer to the 70-year-old woman as "Grandmother" and will refer to the two children, who are brother and sister, as "the children."

was denied. Singh waived his right to a jury, and the matter proceeded to a bench trial where the court found Singh guilty of the charges. The trial court sentenced Singh to consecutive and indefinite sentences totaling 10 to 11-and-one-half years in prison. Singh now appeals his convictions and sentence, raising the following assignments of error.

{¶7} Assignment of Error No. 1:

{¶8} THE TRIAL COURT ERRED BY DENYING SINGH'S MOTION TO SUPPRESS EVIDENCE, IN VIOLATION OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS.

{¶9} Singh argues in his first assignment of error that the trial court erred by denying his motion to suppress because he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights before speaking with the police officer.

{¶10} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Derifield*, 12th Dist. Madison No. CA2020-01-002, 2021-Ohio-1351, ¶ 16. The trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-Ohio-05-012, 2015-Ohio-828, ¶ 8. Therefore, when reviewing a trial court's decision on a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶11} "When a suspect is questioned in a custodial setting, the Fifth Amendment requires that he receive *Miranda* warnings to protect against compelled self-incrimination." *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 34. "A suspect may then

- 3 -

knowingly and intelligently waive these rights and agree to make a statement." *Id.* If a defendant later challenges a confession as involuntarily given, the state must prove a knowing, intelligent, and voluntary waiver by a preponderance of evidence. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 15.

{¶12} The test for voluntariness pursuant to a Fifth Amendment analysis is whether the accused's statement was the product of police overreaching. *State v. Hernandez-Martinez*, 12th Dist. Butler No. CA2011-04-068, 2012-Ohio-3754, ¶ 16. A suspect makes a voluntary confession absent evidence "that his will was overborne and his capacity for self-determination critically impaired because of coercive police conduct." *State v. White*, 12th Dist. Butler No. CA2019-07-118, 2020-Ohio-3313, ¶ 12-14.

{¶13} In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. *Hernandez-Martinez* at ¶ 16.

{¶14} After reviewing the record, we find that the trial court properly denied Singh's motion to suppress. While Singh, who is a native of India, argues that his waiver was invalid because he does not understand English well, the record demonstrates otherwise. The arresting officer had two separate interactions with Singh on the day in question, both of which occurred in English, and neither of which suggested that Singh did not understand English.

{¶15} During the first interaction, which occurred at a gas station not far from the hospital, Singh explained in English to the officer that he was from India, had come to Middletown for a few days, and that he was battling a heroin addiction. Singh also described to the officer that he was experiencing difficulties in life, was seeking help, and that he

wanted to go to the hospital. At that time, the officer discussed with Singh a "game plan" to help him with his issues, which included providing a phone number for a drug counselor, and also arranging for transport to the hospital.

{¶16} The officer testified during the suppression hearing that at no time during this first interaction did Singh indicate that he did not understand what was discussed. Instead, the officer testified that Singh "seemed to be pleased with how I was going about the" interaction, and that Singh was able to "clearly communicate" his issues and desires, all in English.

{¶17} During the second interaction, which occurred after Singh was apprehended, the officer spoke with Singh again and explained to him what was happening. The officer asked Singh if he understood English, and Singh confirmed that he did. The officer then told Singh to let him know if he did not understand what was happening or what was being said. However, Singh never suggested he had difficulty understanding what the officer was saying. Instead, Singh stated that he understood his rights, and also nodded his head indicating that he understood each right as the officer read them.

{¶18} Singh communicated with the officer in English and at all times responded appropriately to the officer's questions. For example, when the officer asked Singh who was in the vehicle when he drove it away, Singh indicated that there were two children in the backseat. Singh also told the officer that he took the vehicle to drive it.

{¶19} After being read his rights, Singh stated, "I feel sorry." While Singh argues that his statement was an indication that he did not understand what he was being discussed, the record indicates that Singh's statement was an attempt to display remorse, rather than confusion. In an abundance of caution, the officer again advised Singh of his rights and sought clarification if Singh wanted to speak to him. After being advised of his rights a second time, Singh indicated his desire to speak with the officer in accordance with

his voluntary waiver.

{¶20} While Singh also argues that he was "ill" from his heroin addiction, such did not render his waiver involuntary. The video of Singh's encounter with the officer does not indicate that Singh was under the influence of heroin. Nor is there an indication that his thinking was unclear or that he was confused or behaving irrationally when talking to the officer. Moreover, the officer testified that he interacts with "dope sick" individuals on a regular basis as part of his police duties, and that in his experience, Singh was not affected by his heroin addiction at the time of his waiver. Such testimony is supported by the video recording.

{¶21} After reviewing the record, we find that the trial court properly denied Singh's motion to suppress because Singh's waiver was made voluntarily, intelligently, and knowingly. Singh's first assignment of error is therefore, overruled. For ease of discussion, and because they are interrelated, we will address Singh's next two assignments of error together.

{¶22} Assignment of Error No. 2:

{¶23} DAVID SINGH'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶24} Assignment of Error No. 3:

{¶25} DAVID SINGH'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNTIED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶26} Singh argues in his second and third assignments of error that his convictions

were against the manifest weight of the evidence and were not supported by sufficient evidence.

{¶27} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, (1991), paragraph two of the syllabus.

{¶28} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶29} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 12th Dist. Clinton No. CA2020-06-007, 2021-

Ohio-466, ¶ 14-15.[2]

{¶30} Singh was convicted of two counts of kidnapping in violation of R.C. 2905.01(B)(1), which provides,

> no person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim: remove another from the place where the other person is found.

"It is possible to kidnap a person by restricting their movement for only a short distance and if only for a brief period of time." *State v. Blanton*, 4th Dist. Adams No. 16CA1035, 2018-Ohio-1278, ¶ 125.

{¶31} After reviewing the record, we find that Singh's kidnapping convictions are supported by sufficient evidence and were not against the manifest weight of the evidence. The state presented evidence that Singh committed kidnapping when he moved the children, both of whom were younger than 13 at the time, from one location to another after getting into the car and driving approximately 40 yards with the children inside. During this time, Singh used force given that he was driving the car and further held one child against her will by holding onto her hood as she tried to escape. Singh's use of force against the children did not end until they were finally able to escape, falling from the car onto the pavement.

{¶32} While Singh initially told the children to get out of the car when he first entered the vehicle, he chose to drive away with the children in the backseat without first ensuring that they had exited. Thus, he knowingly removed the children from the place they were

---

2. Singh limits his discussion to his two kidnapping convictions, and does not challenge his robbery conviction on appeal.

located and drove them some 40 yards away where they escaped from the car.

{¶33} The state also presented evidence that Singh's removal of the children occurred while causing harm or creating a substantial risk of serious physical harm. The evidence is uncontroverted that both children only escaped the moving car by falling out of the vehicle onto the pavement. The resulting injuries easily could have been devastating. For example, there was a substantial risk for serious physical harm had the children's heads struck the pavement with more force, had the children landed face-first, or had they been run over by the vehicle in the process.

{¶34} Singh asserts that he should not have been convicted of a first-degree kidnapping charge because the children were unharmed as a result of the incident. According to R.C. 2905.01(C)(1), one who commits kidnapping is guilty of a first-degree felony unless the offender "releases the victim in a safe place unharmed," which renders the kidnapping charge a second-degree felony.

{¶35} However, the record indicates that Singh did not release the children in a safe placed unharmed. Instead, the children had no choice but to escape by falling from the moving vehicle. Moreover, the evidence demonstrates that both children were physically or psychologically traumatized by the incident. Beyond the struggle with Singh to escape and hitting the pavement after falling from the moving vehicle, one child physically injured her knee, and both were psychologically harmed from the traumatic event.

{¶36} According to the Ohio Supreme Court, the "harm" referenced within R.C. 2905.01(C)(1) includes both physical and psychological harm. *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468. During trial, the state presented evidence that the children suffered psychological harm as evidenced by their being "scared" during the incident and screaming for help. While Singh argues on appeal that the witnesses' testimony regarding their fear was not credible because the children had spoken to the prosecution about the

incident before the trial, the record is clear the children's recollection of events did not change from the time they spoke to police immediately after the incident occurred and that their description of the incident was corroborated by the security camera's video recording.

{¶37} Moreover, when cross-examined at trial about what the prosecution and children discussed, the boy testified that he and his sister, along with Grandmother, were in the same room and talked about what happened on the day of the incident. However, at no time did the child testify that the prosecutor told the children to change their story of events or that the prosecutor steered them in any way regarding their future testimony.

{¶38} Singh also suggested in his brief that the younger child was not competent to testify. However, and according to Evid.R. 601(A), "every person is competent to be a witness except as otherwise provided in these rules."[3] The trial court, who was in the best position to judge the child's capability to testify, did not have any reservation in allowing the child to testify. Nothing in the record suggests the child lacked the ability to remember events and relate what had occurred. The record does not suggest the child was fanciful or fictional, diverging from reality. In fact, the child's testimony appears entirely credible.

{¶39} After reviewing the record, we find that Singh's kidnapping convictions are supported by sufficient evidence and were not against the manifest weight of the evidence. The second and third assignments of error are overruled.

{¶40} Assignment of Error No. 4:

{¶41} THE TRIAL COURT UNLAWFULLY ORDERED SINGH TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE

---

3. Evid. R. 601(A) was amended July 1, 2020, prior to Singh's trial. The prior version of the rule indicated that a child younger than ten needed his or her competency established prior to testifying. However, the amendment removed any reference to children younger than ten being per se incompetent to testify.

FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶42} Singh argues in his fourth assignment of error that the trial court erred in sentencing him to consecutive sentences.

{¶43} An appellate court reviews the imposed sentence according to R.C. 2953.08(G)(2), which governs all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. R.C. 2953.08(G)(2) provides that an appellate court can modify or vacate a sentence only if the appellate court finds by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.

{¶44} A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8. Thus, this court may increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is either contrary to law or unsupported by the record. *Marcum* at ¶ 7.

{¶45} A consecutive sentence is contrary to law where the trial court fails to make the consecutive sentencing findings required by R.C. 2929.14(C)(4). *State v. Jones*, 12th Dist. Butler No. CA2019-05-087, 2020-Ohio-149, ¶ 10-14. Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Smith*, 12th Dist. Clermont No. CA2014-07-054, 2015-Ohio-1093, ¶ 7. Specifically, the trial court must find that (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶46} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 140 Ohio St. 3d 209, 2014-Ohio-3177, ¶ 37. While the trial court is not required to give reasons explaining these findings, it must be clear from the record that the court engaged in the required sentencing analysis and made the requisite findings. *Smith* at ¶ 8.

{¶47} The record clearly indicates that the trial court's sentence was within the statutory range for the enumerated felony designations, supported by the required considerations of R.C. 2929.11 and 2929.12, and included the proper postrelease control notifications.

{¶48} However, the trial court did not make each of the necessary consecutive sentence findings at the hearing when it imposed sentence. During the sentencing hearing, the trial court specifically found (1) that consecutive sentences were "necessary to properly protect the public and to punish the offender," and (2) "the consecutive sentences are not disproportionate to the seriousness of the offender's conduct or danger posed by the

defendant." However, the trial court did not address the third necessary finding regarding the applicability of the R.C. 2929.14(C)(4)(a), (b), or (c) factors. Thus, Singh's consecutive sentence is contrary to law where the trial court failed to make the final consecutive sentencing finding as required by R.C. 2929.14(C)(4).

{¶49} After reviewing the record, we find that the trial court failed to make the necessary findings to impose consecutive sentences. Singh's assignment of error is sustained only as it relates to the consecutive nature of his sentence and the matter is remanded so that the trial court may resentence Singh, making the necessary findings before imposing consecutive sentences.

{¶50} Assignment of Error No. 5:

{¶51} AS AMENDED BY THE REAGAN TOKES ACT, THE REVISED CODE'S SENTENCES FOR FIRST AND SECOND DEGREE QUALIFYING FELONIES VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO.

{¶52} In his fifth assignment of error, Singh argues that the Reagan Tokes Act is unconstitutional because it impinges on his constitutional right to a jury and violates the Equal Protection and Due Process Clauses, as well as the separation of powers doctrine.

{¶53} We begin by noting that Singh did not raise these arguments to the trial court and has thus forfeited his constitutional challenges on appeal. *State v. Teasley*, 12th Dist. Butler No. CA2020-01-001, 2020-Ohio-4626, ¶ 9; *State v. Young*, 8th Dist. Cuyahoga No. 108868, 2020-Ohio-4135, ¶ 21.

{¶54} Even so, this court has addressed the arguments raised by Singh and has declined to find those arguments persuasive. *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353, ¶ 11; *State v. Suder*, 12th Dist. Clermont Nos. CA2020-06-034 and CA2020-06-035, 2021-Ohio-465, ¶ 27.

{¶55} Singh's fifth assignment of error is overruled.

{¶56} Assignment of Error No. 6:

{¶57} THE TRIAL COURT ERRED BY FAILING TO MERGE SINGH'S KIDNAPPING AND ROBBERY OFFENSES, IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶58} In his sixth assignment of error, Singh argues that the trial court erred by not merging his convictions as they are allied offenses of similar import.

{¶59} Pursuant to R.C. 2941.25, Ohio's allied-offenses statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Conrad*, 12th Dist. Butler No. CA2018-01-016, 2018-Ohio-5291, ¶ 43. However, the "failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 3.

{¶60} In determining whether offenses are allied and should be merged for sentencing, courts are instructed to consider three separate factors — the conduct, the animus, and the import. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus. Offenses do not merge, and a defendant may be convicted and sentenced for multiple offenses if *any* of the following are true: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus and ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶61} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. "The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Id.* The burden is on the defendant to establish his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act. *State v. Slamka*, 12th Dist. Butler No. CA2018-10-200, 2019-Ohio-3317, ¶ 27-29.

{¶62} After reviewing the record, we find that Singh's convictions are not allied offenses. Instead, the facts are clear that there are three different victims and the harm caused by the crimes were separate and identifiable.

{¶63} Regarding the victims, the children were separate victims of the kidnapping charges while Grandmother, the car's owner, was a victim of robbery. Moreover, the harms were separate. The kidnapping victims suffered harm associated with the terror they experienced during their kidnapping and physical harm when they eventually escaped the car and fell onto the pavement.

{¶64} On the other hand, Grandmother suffered harm when she was thrown to the pavement trying to stop Singh from stealing her car. Grandmother held onto the door handle yelling for Singh to stop. Yet, Singh continued to flee causing her to fall, suffering physical injury in the process. Specifically, Grandmother was bleeding and bruised and injury was caused to both knees. She also twisted her right arm as she tried to hold onto the door and open it, attempting to prevent the theft of her car. Grandmother testified that she "was beat up pretty bad" from the incident overall. Thus, there are three separate victims, each with their own separate harm, so that the offenses were not allied.

{¶65} Singh's sixth assignment of error is overruled.

{¶66} Assignment of Error No. 7:

{¶67} SINGH RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN

VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶68} Singh argues in his final assignment of error that he received ineffective assistance of counsel.

{¶69} To prevail on an ineffective assistance of counsel claim, an appellant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). According to *Strickland,* in order to prevail on an ineffective assistance of counsel claim, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that that performance prejudiced him. *State v. Simpson*, Slip Opinion No. 2020-Ohio-6719, ¶ 18. An appellant must therefore demonstrate that his or her trial counsel's performance "fell below an objective standard of reasonableness" and demonstrate "a reasonable probability that, but for [his or her trial] counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Ford*, 12th Dist. Madison No. CA2019-10-027, 2021-Ohio-782, ¶ 13.

{¶70} After reviewing the record, we find that Singh was not denied effective assistance of counsel during the bench trial. Singh argues that his trial counsel was ineffective for failing to object to the constitutionality of the Reagan Tokes Act, failure to argue allied offenses, and failure to argue that the youngest witness was incompetent to testify. However, given our discussion of these issues in the above assignments of error, there is no indication that any objection raised regarding these issues would have been successful.

{¶71} Moreover, Singh neither argues nor demonstrates that any of the errors he asserts on appeal would have changed the outcome of his trial. Specifically, even without the child's testimony, there was other testimony and video surveillance that clearly showed what occurred during the incident and the evidence was overwhelming of Singh's guilt.

Thus, Singh has failed to show a reasonable probability that, but for his trial counsel's alleged errors, the result of the proceeding would have been different.

{¶72} Singh's final assignment of error is overruled.

{¶73} Judgement affirmed in part, reversed in part, and the matter is remanded for the limited purpose of resentencing.

S. POWELL and BYRNE, JJ., concur.